Filed 9/29/25  P. v. Mendoza CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ELMER ALEXANDRO MENDOZA,<br><br>    Defendant and Appellant. | G063433<br><br>(Super. Ct. No. 22HF0550)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Reversed and remanded.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Kathyrn A. Kirschbaum and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Elmer Alexandro Mendoza was convicted of two sexual assault crimes against his girlfriend's 14-year-old disabled daughter. On appeal, Mendoza argues the trial court erred in (1) overruling his objection to the prosecutor's peremptory challenge of a prospective juror in violation of Code of Civil Procedure section 231.7[1], and (2) in imposing a suspended parole revocation restitution fine because he was sentenced to life without the possibility of parole.

We conclude the trial court erred in overruling Mendoza's objection to the peremptory challenge because it improperly ruled on the objection before hearing the prosecutor's reasons for the challenge and did not address the presumptively invalid reasons raised by the prosecutor's ultimate explanation. Accordingly, we reverse the conviction and remand the case to the trial court for a new trial.[2]

FACTS

*A. Jury Selection*

One of the potential jury members, prospective juror No. 117 (PJN 117), was an Asian male. During voir dire, the trial court questioned PJN 117 as follows:

"The Court: [A]nything that went through the criminal justice system that sort of impacted how you feel about any portion of the criminal justice system?

"[PJN 117]: Yeah. I guess my father-in-law, he was a cop and

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Because we are reversing and remanding the case, we decline to address Mendoza's other claims of error.

2

then he was, I guess—I don't know how much I want to get into it but he was also accused of stuff and it went up—pretty up there. It did look kind of bad, in my eyes, how he was treated by judges, lawyers, and also the cops that he worked with.

"The Court: Okay. So you knew him when he was still a law enforcement officer?

"[PJN 117]: Yes.

"The Court: All right. And you think that the stuff he was accused of, it sounds like you don't think he—either did it or didn't do it to the way it was addressed?

"[PJN 117]: Yeah. I think he was kind of used as a scapegoat.

"The Court: Okay. And that was both by his colleagues and then by the criminal justice system?

"[PJN 117]: Yes.

"The Court: All right. Was that in Orange County?

"[PJN 117]: No. L.A.

"The Court: County of Los Angeles? Do you think—I mean, these questions have been going on for two days so I feel like people are like, yeah, I already know what you want to know. [¶] But do you think you're at that point where it's like, okay. I'm going to have to listen to witnesses, some of them are going to be police officers, I'm going to listen to two lawyers—

"[PJN 117]: Yeah.

"The Court: Go ahead.

"[PJN 117]: Sorry. Yeah. I did notice that the D—D.A. had a lot of witnesses who were cops.

"The Court: Right.

3

"[PJN 117]: And then just from the stuff I hear on the news and then plus what happened with my father-in-law, kind of maybe jaded on how truthful cops can be. [¶] But, yeah. I would try my best to put it aside because it is a different case, different circumstances. But, yeah.

"The Court: Okay. There's nothing wrong with being jaded. In fact, what would be wrong is saying I automatically—either way; right? I'm going to believe him—I'm pro-cop; I'm going to believe him. Or, there's no chance of me believing him before they even testify. [¶] So when they come in, each witness, whether—you know, sometimes they come in in uniform, sometimes not, but they're all people that they stop at the kind of—here it would be sort of out there by the podium, raise their right hand, take an oath. [¶] If every juror says, all right. I'm at the same level with this person coming in and then they sit down and start answering questions, then you evaluate their testimony. That actually is the job. [¶] But if you're already, like, well, before they even take an oath but they're cops; therefore, I can't evaluate them. I'm already holding something either against them or giving them some freebies, then you're not being true to that oath.

"[PJN 117]: Right.

"The Court: What do you think?

"[PJN 117]: Like I said, I would try my best. But he also suffered from Alzheimer's.

"The Court: Your father-in-law?

"[PJN 117]: Yeah.

"The Court: Okay.

"[PJN 117]: And so when he got put away, it was like the last two years that he was still kind of there.

"The Court: When you say he got put away, did he have to go do time?

"[PJN 117]: Yeah.

"The Court: Custody for it? [¶] Okay. As we stand right now though, the answer is I'll do my best but you're not sure; is that fair?

"[PJN 117]: Yeah.

"The Court: Okay. Thank you."

Defense counsel then questioned PJN 117 as follows:

"[Defense counsel]: Thank you. Okay. [PJN] 117, do you think it's possible for you to believe a police officer?

"[PJN 117]: Yeah.

"[Defense counsel]: Okay. So if you listened to a police officer testify—and just because we're talking about police officers testifying doesn't mean that a police officer is some star or main witness in this case. It could be, it could—might not be. [¶] But if you hear a police officer testify on the witness stand and don't believe him, then you're just not going to believe him and you're going to discredit his testimony, I assume; right?

"[PJN 117]: Yeah. If I don't believe him, yeah.

"[Defense counsel]: If you don't believe him. But if you listen to him and what he says makes sense and he seems like he's telling the truth and you believe him, you're—you're not just going to throw out his testimony because he's a police officer; right?

"[PJN 117]: Right.

"[Defense counsel]: Okay.

"[PJN 117]: But, yeah.

"[Defense counsel]: And so in other words, as long as you can do that, it's—it doesn't disqualify you from being a juror if you have a distrust or

5

even a dislike or negative view of police."

The prosecutor questioned PJN 117 as follows:

"[Prosecutor]: Again, I think I sensed you get emotional when you started to talk about your father-in-law; is that correct?

"[PJN 117]: Yeah.

"[Prosecutor]: And again, forgive me. I don't want to pry, but let me ask you. Is it something related to that law enforcement piece that you've described that makes you feel that you would not be able to sit fairly, impartially, and listen to testimony in this case that comes in a law enforcement capacity?

"[Defense counsel]: Objection. Misstates his answers.

"The Court: Sustained.

"[Prosecutor]: Let me ask you, PJN 117. You mentioned it was related to your father-in-law; is that right?

"[PJN 117]: Yes.

"[Prosecutor]: All right. Am I accurate in perceiving that you have an emotional response about your father-in-law?

"[PJN 117]: Yes.

"[Prosecutor]: Okay. You share that it was to—again, forgive me. I don't want to pry but I want to make sure that I'm understanding correctly so I can make the record clear for me. [¶] I know you mentioned that he ultimately had to serve time in custody; is that right?

"[PJN 117]: Correct.

"[Prosecutor]: And is that part of the emotional piece for you?

"[PJN 117]: Yes.

"[Prosecutor]: Okay. Does the emotion that you're having also relate to – forgive me. [¶] Obviously that being emotional, you said because

6

your faither-in-law not only was former law enforcement but then individuals related to his case were law enforcement?

"[PJN 117]: Correct.

"[Prosecutor]: Okay. So if you were chosen as a juror on this case, [PJN] 117, to whatever extent you might hear testimony from a law enforcement officer, do you feel that those law enforcement officers are starting behind the line that everybody else is on?

"[PJN 117]: Like, I hate to admit it, but probably.

"[Prosecutor]: Okay.

"[PJN 117]: Yeah.

"[Prosecutor]: Like all the things we've talked about where, when we're evaluating the credibility of witnesses and we talk about if a defendant were to choose to testify or other witnesses, we judge them all by the same standards. [¶] You're saying the law enforcement officers have to try a little harder?

"[PJN 117]: It has—like, we haven't heard anything more than this example, I guess, but I would try my best. But, yeah. It's—it would be a little tough, I think.

"[Prosecutor]: Okay. And do you think that they're—they're starting behind the line?

"[PJN 117]: Like, it was their—their word and that's, like the only evidence? Probably.

"[Prosecutor]: So you want additional corroboration for something that a law enforcement says?

"[PJN 117]: Yes."

Outside the presence of the potential jurors, the following exchange regarding challenges for cause took place:

7

"[Prosecutor]: I do have a cause challenge as to PJN 117. He's the one whose father-in-law—

"The Court: Yeah. The best you got him was they start behind a line. I understand that's—it's the art of discussion, but it—he—he didn't always stay there, and I'm not sure what that phrase even means. [¶] If I instruct him—he also said if I instruct him that everybody—you take the testimony of each witness, could they be believed? Could they be not believed? That's kind of where he is. So I'm going to deny it.

"[Defense counsel]: And I'd object to that one.

"[Prosecutor]: And I guess I'll just—the only thing I would add is that I did specifically say, so you would need additional corroboration to believe a law enforcement officer? And he said yes.

"The Court: You did say that. And he did say yes.

"[Prosecutor]: Just noting."

After defense counsel accepted the jury panel as constituted, the prosecutor made a peremptory challenge to PJN 117:

"The Court: All right. People would be choosing to exercise a peremptory on either [PJN] 117 or [prospective juror number]185?

"[Prosecutor]: [PJN] 117, please.

"The Court: All right. [PJN] 117, you are excused.

"[Defense counsel]: And I do have an objection.

"The Court: All right. We will go—hang out. We'll go on the record in the hallway."

The following proceedings were held in chambers outside the presence of the jury:

"[Defense counsel]: I have an objection under [section] 231.7. Reasons presumed invalid are distrust of law enforcement, negative

8

experience with law enforcement, negative experience with the legal system. And submit on that.

"The Court: What is his race?

"[Prosecutor]: I was just going to say, I'm going to inquire what the protected class is.

"The Court: Because it is a male, and I don't—I didn't—and your client's Hispanic. He's a Spanish speaker. I don't believe this gentleman's of the same race.

"[Defense counsel]: I think he—he's Asian of some sort.

"The Court: He might be. He does appear to be. Okay.

"[Prosecutor]: I'm going to—

"The Court: Go ahead.

"[Prosecutor]: I think it's appropriate at this time that I inquire with counsel what the impermissible class or protected class is that I am—

"The Court: I think he's saying it's the Asian part of the—

"[Defense counsel]: That's not how [section] 231.7 works. I make the objection. Once the objection's made, the burden shifts to the People to—to give a basis other than the reasons presumed invalid that I stated.

"[Prosecutor]: And I'm happy to do that. I just want to make sure I'm understanding it correctly. Because the—the presumed reasons that counsel has stated are—are presumed invalid because they are a front for an impermissible basis. [¶] So I think the People still have a right to ask what that impermissible or protected class is that the impermissible basis is perceived to be biased against.

"The Court: Well, the only thing we have is now on the record, which is he appears to be an Asian male. So I don't think you're saying it because he's young or old or any other—

9

"[Defense counsel]: And—

"[Prosecutor]: I don't know—I will put on the record I do not know what nationality he is.

"[Defense counsel]: Can I point something out? This objection is—is not based on his race. I—that's not my read of [section] 231.7.

"The Court: Okay.

"[Defense counsel]: That is not the accusation I'm making against the People, that it's based on race or because he's part of a cognizable class. [¶] My reading of [section] 231.7 is that if the reason for the peremptory use is because of [section] 231.7(e)(1) . . . then it's a reason presumed invalid and it's not a valid peremptory.

"The Court: Okay. My view—my view of that is that is correct when there is a—an exclusion of a race. This statute is an alteration. [¶] I'm sure many people would call it an improvement – and it might be – to a *Batson-Wheeler*[3] challenge where there would be an objection, hey, you're excluding a certain class of people and the rule kind of still left it on generally the defense lawyer in making that objection to come up with certain things that protected the opposing counsel from having to state those reasons. [¶] This basically does shift the burden to the People when the allegation is made to give a race-neutral or a bias-neutral reason that has to do with the bias, whether it's race, sexual orientation, or some other categories. [¶] It sounds like we're already vague on whether there even is a protected category by [PJN]117. But we have a record where, at least to the judge and to the defense lawyer, he does appear to be Asian and, you know, that's the

---

[3] *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

10

most we can do. [¶] We don't ask those questions of jurors, but I don't believe that if the objection is just somebody doesn't trust police, that the other side, generally the D.A., can't exclude—use a peremptory challenge for that person. [¶] And I want to put out something else on the record. I did not grant the for cause component, which when the People asked about this same juror. But unlike where the statute's written, the statute and—I think the analysis of the statute is, I don't trust cops but I could be fair; I've had bad experiences with cops but I can do the job. And it's the 'But I've had the bad' that was used to exclude the juror anyway. [¶] This particular juror didn't go all the way to say, but I can do it. He didn't say I absolutely can't do it. He was vague enough, and that's why I didn't grant the cause challenge. [¶] But he has not reassured us that he could put those things aside. He's left them vague enough that I'm going to overrule the objection, allow the peremptory as to [PJN] 117.

"[Defense counsel]: And just to be clear, yeah. I wasn't making an accusation that it was based on race. It was just based on my stated reasons—my reading of [section] 231.7.

"The Court: Okay. All right. Did you need to put anything else on the record for—as you view it?

"[Prosecutor]: I mean, I think I—I made my position clear at the time of the cause challenge and I'll just reiterate he specifically was emotional, he confirmed that on questioning with him which was related to the fact that he felt that fellow law enforcement had mistreated his father-in-law and somehow caused his father-in-law to improperly be in custody in some capacity, which matters only, of course, to the case as to just as His Honor has said, whether or not he can actually set such aside and be fair in the analysis of the evidence in this particular case. [¶] And I—regardless of

11

the words he used, although I—like the Court has said, I don't think that he was unequivocal or able to actually say, 'I can't be fair.' [¶]Additionally, I think the emotion speaks for itself that he carries some emotion in relation to law enforcement testimony. He did specifically say he would need more corroboration for a law enforcement witness, and we have members from the Orange County Sheriff's Department that are in a forensic specialist capacity, collecting samples, DNA, people from Orange County Crime Lab which can be perceived as law enforcement, and so there are, of course, law enforcement officers or people who would—you would argue in the law enforcement umbrella. [¶] And ultimately I do think that [section] 231.7, exactly as the Court indicated, is about whether it's just by the mere fact that they've had negative experiences. If they can otherwise be fair, that is an impermissible basis on its face. [¶] But this I think is a very different situation and he has made clear that his situation regarding his father-in-law, his father[-]in[-]law's case, that relationship to law enforcement would prevent him from being unbiased in this particular case.

"The Court: All right. Do you have your record made?

"[Defense counsel]: Yeah. I think the record speaks for itself."
The trial court then excused PJN 117.

B. *Procedural History*

The jury found Mendoza guilty of forcible sexual penetration of a minor (Pen. Code § 289, subd. (a)(1)(C); count 1) and sexual penetration of a disabled victim (Pen. Code § 289, subd. (b); count 2). Regarding count 1, the jury found true allegations Mendoza inflicted great bodily injury within the meaning of Penal Code sections 667.61, subdivision (l) and 12022.8. Regarding count 2, the jury found true the allegation he inflicted great bodily injury within the meaning of Penal Code section 12022.7. The trial court

12

sentenced Mendoza to a sentence of life in prison without the possibility of parole.

Mendoza timely appealed.

DISCUSSION

I.

SECTION 231.7 CHALLENGE TO PJN 117

Mendoza contends the trial court erred by overruling defense counsel's objection to the prosecutor's peremptory challenge to PJN 117 before the prosecutor stated her reasons for the peremptory challenge. We agree.

A.  *Section 231.7 Procedures*

"The Legislature enacted section 231.7, effective in criminal trials beginning January 1, 2022, to establish 'a new process for identifying unlawful bias in the use of peremptory challenges during jury selection.'" (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 539.) The statute prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).)[4]

The statue specifies the process that must be followed if a party or the trial court objects to the use of a peremptory challenge. First, "the

---

[4] Defense counsel made it clear their objection was not based on the prospective juror's "race or because he's part of a cognizable class[,]" but presumptively invalid reasons of negative experience with law enforcement and the legal system. Nevertheless, the court and counsel agreed the prospective juror was a male of Asian descent.

13

party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) Second, the trial court determines whether any of the provided reasons is presumptively invalid, and, if so, whether the presumption is overcome under the circumstances. (*Id.*, subds. (e) & (g).) Third, if there is no presumption of invalidity or any presumption is overcome, the trial court "evaluate[s] the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (*Id.*, subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained. The court need not find purposeful discrimination to sustain the objection." (*Ibid.*) The statute provides a nonexhaustive list of circumstances a trial court may consider in making its determination. (*Id.*, subd. (d)(3)(A)-(G).) When a trial court makes a ruling, it must "explain the reasons for its ruling on the record." (*Id.*, subd. (d)(1).)

Notably, the statute is aimed at both targeted and unconscious bias. In that regard, the statute explains "an objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (§ 231.7, subd. (d)(2)(A).)

On appeal, the overruling of an objection under section 231.7 is reviewed de novo "with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) The appellate court is to consider

14

only those reasons actually given by the trial court and may "not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court." (*Ibid.*) If the appellate court concludes the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

## B. Analysis

The trial court erred by failing to follow the statutory procedure required when evaluating objections to peremptory challenges under section 231.7. The statute requires the "party exercising the peremptory challenge [to] state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) Only then does the court evaluate those reasons to determine whether they are presumptively invalid, and, if so, whether the presumption is overcome under the circumstances, or whether those reasons "justify the peremptory challenge in light of the totality of the circumstances." (*Id.*, subd. (d)(1).)

Contrary to this required two-step process, the trial court ruled on defense counsel's objection before seeking a response from the prosecutor. Rather than requesting the prosecutor state her justifications for the peremptory challenge, the court instead posited its own reasons for denying the objection, i.e., the prospective juror gave "vague" answers to questions regarding whether he could put aside any possible bias against police officers based on his father-in-law's alleged improper criminal conviction. Only after denying the objection to the peremptory challenge did the court ask the

15

prosecutor whether she wanted to "put anything else on the record." The prosecutor then largely echoed the court's reasons for the challenge, even citing the court's prior statements three separate times:

"I made my position clear at the time of the cause challenge and I'll just reiterate he specifically was emotional, he confirmed that on questioning with him which was related to the fact that he felt that fellow law enforcement had mistreated his father-in-law and somehow caused his father-in-law to improperly be in custody in some capacity, which matters only, of course, *to the case as to just as His Honor has said*, whether or not he can actually set such aside and be fair in the analysis of the evidence in this particular case.

"[R]egardless of the words he used, although I—*like the Court has said*, I don't think that he was unequivocal or able to actually say, 'I can't be fair.'

"Additionally, I think the emotion speaks for itself that he carries some emotion in relation to law enforcement testimony. He did specifically say he would need more corroboration for a law enforcement witness, and we have members from the Orange County Sheriff's Department that are in a forensic specialist capacity, collecting samples, DNA, people from Orange County Crime Lab which can be perceived as law enforcement, and so there are, of course, law enforcement officers or people who would—you would argue in the law enforcement umbrella.

"And ultimately I do think that [section] 231.7, *exactly as the Court indicated*, is about whether it's just by the mere fact that they've had negative experiences. If they can otherwise be fair, that is an impermissible basis on its face.

"But this I think is a very different situation and he has made clear that his situation regarding his father-in-law, his father[-]in[-]law's case, that relationship to law enforcement would prevent him from being unbiased in this particular case. (Italics added.)"

Under section 231.7(j), an appellate court may consider only the reasons "actually given" by the party exercising the peremptory challenge in reviewing the trial court's ruling. A reason is "actually given" when the party exercising the challenge "states the reason *before* the trial court rules on the objection," even if the reasons were not articulated by the party when initially objecting and the trial court first suggested the reason. (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 799–800.) Here, the trial court only sought the prosecutor's explanation for the peremptory challenge after having already ruled on defense counsel's objection and posited its own reasons for denying the objection.

Even if the prosecutor had offered their explanation for the peremptory challenge before the court ruled on defense counsel's objection, the prosecutor's explanation for the challenge to PJN 117 included three separate presumptively invalid reasons: (1) a negative experience with law enforcement or the criminal justice system (§ 231.7, subd. (e)(1)); (2) a close relationship with someone arrested or convicted of a crime (*Id.*, subd. (e)(3)); and (3) the potential juror's "demeanor" or emotion. (*Id.*, subd (g)(1)(B).) Yet, the court neither considered the presumptive invalidity of these reasons, nor whether that presumption was overcome.

Accordingly, the court erred in failing to properly apply section 231.7.

## DISPOSITION

The judgment is reversed, and the case is remanded for a new trial.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


SCOTT, J.